UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FAIRWAY MEDICAL CENTER, LLC D/B/A AVALA | CIVIL ACTION |
| VERSUS | NO. 22-1150 |
| CONTINENTAL CASUALTY COMPANY | SECTION: H(2) |

## ORDER AND REASONS

Before the Court is Defendant Continental Casualty Company's Motion to Dismiss (Doc. 4). For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

This case arises out of a dispute over insurance coverage for losses allegedly sustained during the COVID-19 pandemic. Plaintiff, Fairway Medical Center, d/b/a AVALA ("AVALA") operates a hospital and several related healthcare facilities in Louisiana.[1] On November, 1, 2019, Plaintiff purchased insurance policies from Defendant Continental Casualty Company ("Continental"), "which provided business personal property, business income, business interruption, and civil authority coverages" ("the Policy").[2] The Policy covered all six of Plaintiff's properties and was in effect at all times relevant to this suit.

---

[1] Doc. 1-2, ¶6. Avala owns and operates a hospital, a physical therapy center, a warehouse, a medical lab, administrative offices, and a satellite clinic. *Id.*
[2] *Id.* at ¶8.

1

In March of 2020, Louisiana Governor John Bel Edwards and St. Tammany Parish President Michael Cooper declared a statewide public health emergency, which required individuals to stay at home unless engaged in an essential activity. The Louisiana Department of Health ("LDH") also issued guidance in March of 2020 to postpone medical procedures that could be safely postponed.[3] From April to June of 2020, LDH authorized medical professionals to treat only "time sensitive medical conditions."[4] On June 4, 2020, LDH lifted its order and allowed medical and surgical procedures to proceed as long as personnel used proper personal protective equipment and followed COVID-19 testing protocols.[5] Collectively, these orders are referred to as the Government Orders.

In April of 2022, Plaintiff filed suit in state court to obtain coverage under its Policy with Defendant for the losses incurred as a result of COVID-19 and the Government Orders. Plaintiff brought two claims, namely, breach of the insurance contract based on Defendant's denial of coverage and breach of the implied covenant of good faith and fair dealing pursuant to Louisiana Revised Statutes § 22:1973 and 22:1892. After Plaintiff filed suit, Continental removed the suit to this Court based on diversity jurisdiction.

Now before the Court is Defendant Continental's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[6] A claim is

---

[3] Doc. 4-3 at 10.
[4] Doc. 4-3 at 20–21.
[5] Doc. 4-3 at 28–30.
[6] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2005)).

"plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[8] The court need not, however, accept as true legal conclusions couched as factual allegations.[9] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[10] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[11] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[12]

## LAW AND ANALYSIS

Plaintiff seeks coverage for its losses from COVID-19 and the COVID-19 Government Orders under five distinct provisions of its commercial property insurance policy with Continental Casualty Company bearing policy number 6023215668. These five provisions are General Coverage, Business Interruption Coverage, Extra Expense Coverage, Denial of Access by Civil Authority Coverage, and Ingress-Egress Coverage. Defendant contends that the provisions of the policy exclude coverage.

The General Coverage provision states that the Policy "insures against risks of direct physical loss of or damage to property."[13]

---

[7] *Id.*
[8] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[9] *Ashcroft*, 556 U.S. at 678.
[10] *Id.*
[11] *Lormand*, 565 F.3d at 255–57.
[12] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[13] Doc. 4-2 at 21.

3

The Business Interruption Coverage provision provides that the Policy "covers against loss resulting from necessary interruption of business caused by direct physical loss of or damage to covered property."[14]

The Extra Expense Coverage provision states that the Policy "will pay for the reasonable and necessary extra expense . . . in order to continue as nearly as practicable the normal operation of the Insured's business following direct physical loss of or damage to covered property by peril(s) insured against."[15]

The Denial of Access by Civil Authority provision provides coverage for "actual loss sustained[] . . . during the period of time while access to the Insured's Location is prohibited by order of civil authority, but only when such order is given as a direct result of physical loss or damage to property."[16]

Finally, the Ingress-Egress Coverage provision provides coverage for losses sustained "during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the Insured's Location is thereby physically prevented."[17] Additionally, the Policy does not contain an exclusion for losses due to a virus or pandemic.[18]

The general coverage, the Business Interruption Coverage, and Extra Expense Coverage provisions in the Policy require that the loss be caused by "direct physical loss of or damage."[19] The Civil Authority provision requires that the "order is given as a direct result of physical loss or damage," and the Ingress Egress provision requires that ingress and egress be "physically

---

[14] Doc. 4-2 at 22.
[15] *Id.* at 26 (emphasis omitted).
[16] *Id.* at 25 (emphasis omitted).
[17] *Id.* (emphasis omitted).
[18] Doc. 1-2 at ¶ 14.
[19] Doc. 4-2 at 21, 22, 26.

4

prevented" as a "direct result of physical loss or damage."[20] This Court finds that a clear reading of the Policy requires direct physical loss or damage to property to trigger coverage.

Defendant argues that Plaintiff's allegations do not trigger any of the coverage provisions because losses caused by COVID-19 and the Government orders were not the result of physical loss or damage. To determine whether Plaintiff plausibly alleged a claim for coverage, the Court must interpret the insurance contract between Plaintiff and Continental, and specifically, the phrase "direct physical loss or damage." The parties do not dispute that Louisiana law governs the Policy. Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[21]

"The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[22] "When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent."[23] "An insurance policy must be construed as a whole and each provision must be interpreted to give meaning to each provision."[24] "One portion of the policy should not be

---

[20] Doc. 4-2 at 25.
[21] In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007) (quoting Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003)).
[22] Wisznia Co. v. Gen. Star Indem. Co., 759 F.3d 446, 448–49 (5th Cir. 2014) (quoting Mayo v. State Farm Mut. Auto. Ins. Co., 869 So. 2d 96, 99 (La. 2004) (citing LA. CIV. CODE arts. 2045, 2047)).
[23] Gorman v. City of Opelousas, 148 So. 3d 888, 892 (La. 2014) (citation omitted).
[24] Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co., 29 F.4th 252, 257 (5th Cir. 2022) (citing Peterson v. Schimek, 729 So. 2d 1024, 1029 (La. 1999)).

construed separately at the expense of disregarding other provisions."[25] "After applying these general rules of interpretation, if a true ambiguity exists in the policy language, the court must construe the policy in favor of the insured."[26] A policy provision is ambiguous if it "is susceptible to two or more reasonable interpretations."[27]

### i.   *Q Clothier* is Precedential and Controls

Defendant argues that under the terms of the Policy, Plaintiff has not plausibly alleged a claim for coverage because there were no allegations of direct physical damage to property. In so arguing, Defendant relies on the Fifth Circuit decision of *Q Clothier,* which held that pandemic-related losses "do not fall within the meaning of 'direct physical loss of or damage to property.'"[28] Plaintiff argues that this Court should instead follow *Cajun Conti,* which held the phrase direct physical loss or damage to be ambiguous and construed the policy to extend coverage to pandemic related losses.[29] In relying on this case, Plaintiff argues it has plausibly pleaded a claim for coverage. This Court finds that first, *Q Clothier* controls the analysis, and second, that Plaintiff has not plausibly alleged a claim for coverage.

Plaintiff directs this Court to the Louisiana Fourth Circuit Court of Appeal's recent decision in *Cajun Conti LLC v. Certain Underwriters at Lloyd's* and argues that under the rationale of this case, it plausibly alleged a claim for coverage.[30] Defendant, however, replies that this argument "fails because it misconstrues the interplay between Louisiana law, published Fifth Circuit

---

[25] *Peterson*, 729 So. 2d at 1029 (citing LA. CIV. CODE art. 2050).
[26] *Q Clothier New Orleans, L.L.C.*, 29 F.4th at 257 (citing Bonin v. Westport Ins. Corp., 930 So. 2d 906, 911 (La. 2006)).
[27] *Bonin*, 930 So. 2d at 911 (citing *Cadwallader*, 848 So. 2d at 580).
[28] *Q Clothier New Orleans*, L.L.C., 29 F.4th at 262.
[29] Cajun Conti LLC v. Certain Underwriters at Lloyd's, London, No. 21-0343, 2022 WL 2154863, at *8 (La App. 4 Cir. June 15, 2022).
[30] Doc. 8 at 2; *Cajun Conti LLC*, 2022 WL 2154863.

caselaw, and *Erie.*[31] This Court agrees with Defendant that *Q Clothier* remains binding precedent which controls the analysis in this case.

The Louisiana Supreme Court has not yet interpreted the phrase, "direct result of physical loss or damage to property," from the Policy, but in *Q Clothier New Orleans, L.L.C.*, the Fifth Circuit gave its *Erie* guess as to how the state supreme court would decide the issue. The court determined that "the Louisiana Supreme Court would interpret 'direct physical loss of or damage to property' to cover only tangible alterations of, injuries to, and deprivations of property."[32]

Plaintiff argues that under *Erie,* adherence to the Fifth Circuit's interpretation of the relevant policy language in *Q Clothier* must be reevaluated in light of *Cajun Conti.*[33] In *Cajun Conti,* the court reversed a bench trial judgment that COVID-19 did not cause direct physical loss of or damage to insured property.[34] The court did not address the question of direct physical loss or damage and based its reasoning on ambiguities in the policy.[35] Since the term "direct physical loss" was undefined in the policy, the court construed the provisions in favor of the insured and extended coverage for pandemic related losses.[36] Plaintiff urges the Court to reexamine its adherence to the *Erie* guess made in *Q Clothier* in light of this recent opinion, stating that the Court "should follow the most analogous Louisiana state court appellate decision."[37]

The Fifth Circuit, however, has held that a singular contrary state appellate court decision does not justify a departure from precedent. In *F.D.I.C.*

---

[31] Doc. 11 at 2.
[32] *See Q Clothier New Orleans*, L.L.C., 29 F.4th at 257.
[33] *Cajun Conti LLC*, 2022 WL 2154863.
[34] *Id.* at *1.
[35] *Id.* at *3.
[36] *Id.* at *8.
[37] Doc. 8 at 10.

*v. Abraham*, the court stated that when an *Erie* analysis of state law is conducted and there is "neither a clearly contrary subsequent holding of the highest court of the state nor a subsequent statutory authority, squarely on point . . . we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous" decisions from the state appellate courts.[38] The court also stated that it was even more reluctant to be bound by the holding of one intermediate state court decision in Louisiana, where the primary sources of law are the state constitution, the civil code, and statutes.[39] In Louisiana, the decisions of state courts are not binding and are only persuasive authority until "such decisions achieve the force of law through the Civil Law doctrine of *jurisprudence constante.*"[40] Ultimately, one state appellate court decision does not alone justify a departure from precedent.

Beyond the general guidance in *Abraham,* the Fifth Circuit also recently affirmed a district court's dismissal of a similar case, reaffirming its holding that "'a direct physical loss of or damage to property' cannot be reasonably interpreted to include the 'loss of use' of property."[41] Importantly, the Fifth Circuit has even reaffirmed its holding following the *Cajun Conti* decision. The plaintiff in *Dickie Brennan and Co. v. Zurich American Insurance* similarly directed the Fifth Circuit to the *Cajun Conti* decision and asked the court to reevaluate its *Erie* guess in response to this recent holding.[42] The court reiterated that "direct physical loss or damage" requires "tangible alterations of, injuries to, and deprivations of property" and stated that "the issuance of

---

[38] F.D.I.C. v. Abraham, 137 F.3d 264, 269 (5th Cir. 1998).
[39] *Abraham*, 137 F.3d at 268.
[40] *Id.*
[41] La. Bone & Joint Clinic, L.L.C. v. Trans. Ins. Co., No. 21-30300, 2022 WL 910345, at *3 (5th Cir. Mar. 29, 2022).
[42] Dickie Brennan and Co., LLC v. Zurich Am. Ins. Co., No. 21-30776, 2022 WL 3031308, at *3 n.1 (5th Cir. Aug. 1, 2022).

an intermediate appellate court decision does not alter our duty to apply the rule of orderliness, so we must follow the sound reasoning of *Q Clothier*."[43]

Despite Plaintiff's contentions, the weight of jurisprudence and the law of the circuit requires this Court to adhere to *Q Clothier* and to interpret "direct physical loss of or damage to property" to cover only "tangible alterations of, injuries to, and deprivations of property."[44]

### ii. Plaintiff did not Plausibly Allege a Tangible Alteration of, Injuries to, or Deprivation of its Properties in Order to Trigger Coverage

In *Q Clothier*, a group of clothing stores sought coverage for their losses due to COVID-19 Government Orders.[45] The Fifth Circuit held that because the insured party did not suffer "tangible alterations of, injuries to, and deprivations of property," there was no coverage under the policy.[46] The court pointed out that COVID-19 did not make the property itself "inherently dangerous or uninhabitable," and that there were no allegations of any property that needed to be removed or replaced.[47] Since *Q Clothier,* various district courts have also uniformly found no coverage under similar facts.[48]

Here, Plaintiff alleged that "COVID-19 and the corresponding Civil Authority Orders, caused direct physical loss and damage . . . by physically damaging AVALA's Insured properties and by depriving AVALA of its ability

---

[43] *Id.*
[44] *See Q Clothier New Orleans, L.L.C.*, 29 F.4th at 257.
[45] *Id.* at 256.
[46] *Id.* at 257.
[47] *Id.* at 260–261.
[48] Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co., No. 21-648, 2021 WL 2476867, at *2 (E.D. La. June 17, 2021); La. Bone & Joint Clinic v. Trans. Ins. Co., No. 21-00317, 2021 WL 1740466 (W.D. La. May 3, 2021); Grand Isle Partners, LLC v. Assurant, No. 21-505, 2022 WL 179467, at *5 (E.D. La. Jan. 20, 2022); Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co., No. CV 22-1018, 2022 WL 3576759 (E.D. La. Aug. 19, 2022); Hotel Mgmt. of New Orleans, LLC v. Gen. Star Indem., Co., No. 21-876, 2022 WL 1503299 (E.D. La. Aug. 19, 2022); BJZJ, LLC v. Mt. Hawley Ins. Co., No. 21-00998, 2022 WL 885883 (W.D. La. March 24, 2022).

9

to physically function as a full-service hospital."[49] Plaintiff goes on to allege that COVID-19 was present on their insured properties and that this caused "direct physical loss and damage . . . which have lost income because of mandates to close for certain periods of time, to discontinue all non-elective procedures due to social distancing requirements, to preserve PPE, and to cut back on providing certain medical services."[50] Plaintiff also alleges that COVID-19 caused "property loss or damage . . . resulting in a prohibition of access to the Insured Properties by the Civil Authority Orders."[51]

None of these allegations assert tangible alterations to property. Plaintiff does not assert that there was a need to repair the property, nor to replace any equipment because of the virus. Plaintiff's property remained physically unchanged as a result of COVID-19 and the Government Orders, which only dictated the amount of people who could be present on the premises and the types of procedures that could be performed. This case is factually similar to *Q Clothier*, and this Court finds no reason to reach a different conclusion, as both the Business Interruption and Extra Expense coverage provisions require physical loss or damage, which Plaintiff has not plausibly alleged.

The Civil Authority Coverage provision also requires a connection between the Government Orders and property damage. As the Fifth Circuit explained, there is no connection where the orders respond to a global pandemic, not property damage.[52] The Civil Authority orders were issued to prevent the spread of COVID-19, not in response to property damage.

---

[49] Doc 1-2 ¶ 20.
[50] Doc 1-2 ¶ 21–23
[51] Doc. 1-2 ¶ 26.
[52] *Q Clothier New Orleans, L.L.C.*, 29 F.4th at 260–61; *See also Hotel Mgmt. of New Orleans, LLC*, 2022 WL 1503299, *3.

Therefore, there is not the necessary causal link to trigger coverage under this provision.

Furthermore, the Ingress-Egress Coverage provision requires that ingress to or egress from be physically prevented as a direct result of physical loss or damage to the property. Plaintiff did not plausibly allege physical loss or damage to the property, and as such, also cannot trigger coverage under this provision.

Plaintiff's complaint fails to allege a plausible claim for coverage under any of the provisions of the Policy for its losses as a result of the COVID-19 pandemic. Insofar as Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims were based on a denial of coverage, those claims fail as well. Accordingly, the Court dismisses Plaintiff's claims against Continental.

## CONCLUSION

For the foregoing reasons, Defendant Continental's Motion to Dismiss for Failure to State a Claim (Doc. 4) is **GRANTED** and all of Plaintiff's claims against Continental are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 19th day of September, 2022.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**